# Exhibit A

# AFFIDAVIT OF CALVIN "BUDDY" HORTON

THE STATE OF TEXAS     §
                                      §
COUNTY OF BASTROP    §

      BEFORE ME, the undersigned Notary Public, on this day personally appeared Calvin "Buddy" Horton, known to me to be the person whose name is subscribed to this Affidavit, and who, being duly sworn on his oath, deposed and said:

1.      My name is Calvin "Buddy" Horton. I am over twenty-one years of age and am fully competent to make this Affidavit. I have personal knowledge of the facts set forth in this Affidavit, and they are true and correct. Currently, I live in Red Rock, Texas.

2.      When my cousin Stacey Stites ("Stacey") was 16 years old, she and her mother moved in with my parents, Janice and Ray Horton, in Rosanky, Texas—less than a mile from where I lived with my wife Camille Horton and our three young children, Jaymi, Whitford and Steven, at the time. I traveled to Corpus Christi around this time to help Stacey and her mother Carol move their belongings into a storage facility in the Bastrop area.

3.      I understood from speaking with my parents that Stacey's mother was concerned that Stacey had begun dating and associating with men at an early age—including black men—that Stacey had gotten pregnant, and that her mother decided to move after Stacey's pregnancy. My father told me that Carol was concerned about the influences in Stacey's environment in Corpus Christi and wanted to leave.

4.      Stacey and Carol lived with my parents for approximately two months, but within that time, my mom and father informed me that some of Stacey's traits from Corpus Christi resurfaced. According to them, she would continue to see men, was disobedient and would leave the house at-will. Because of this, my dad asked my mom and wife to seek out more suitable housing for them. Eventually, my wife and my mother found a home in Smithville for Carol and Stacey to live. As I had done before, I helped Stacey and her mother move. This time I moved their belongings from the storage facility to the Smithville home, where they stayed until they moved to Bastrop.

5.      One Sunday evening, around five, or six o'clock in 1995, two of my young children, Jaymi and Whitford, and I went to the Dairy Queen in Bastrop to get some ice cream. I remember they were young at the time—both were under the age of ten. I also remember it was a warm day, but the weather was not hot or humid as is typical in Texas summers. I believe it was sometime between October and November. At that time in my life I worked as a carpenter and did not get Saturdays off. The only day I would have been able to take them for ice cream would have been on a Sunday.

6.      As I pulled into the Dairy Queen in the Ford pickup I was driving at the time, with my children inside, I remember seeing Stacey coming out of the Dairy Queen

with a black man. I hollered her name to get her attention as I drove in, but she did not respond. I know they heard me because both Stacey and the black man looked directly at me, but neither came toward me. I have a rather loud voice; I easily project and rarely have a difficult time being heard.

7. Seeing Stacey with a black man did not surprise me because I remembered what my parents told me about her dating and associating with black men. Stacey, however, was shocked; she seemed embarrassed when she saw us and she quickly left with the black man without introducing me. Stacey and the black man got into a darker colored car that Stacey was driving, and they drove off without speaking to me or my children. I told my father of this incident, but to me it was not a big deal at the time because I had been told that Stacey associated with black men.

8. Sometime after Stacey's death I remember seeing pictures of Rodney Reed on the news and in the newspaper after he became a suspect in the death of my cousin. Rodney Reed is the same man I saw with Stacey at the Dairy Queen in 1995. I understand that the appeals courts have previously said that there were no credible witnesses that would testify as to having seen Rodney and Stacey together. I would have testified to my experience at the Dairy Queen in 1995 at trial, but no one ever approached me to do so. Since then, I have told other members of my family and would have told law enforcement and prosecutors the same had they interviewed me or shown any interest.

9. Because of this information, and Stacey's behavior at this time in her life, I have always believed Mr. Reed's story that he had a relationship with my cousin Stacey —despite the unfortunate pain it brings upon my aunt Carol. I do not wish to cause her, or my family, any more pain. I simply want to bring this truth to light.

Further Affiant sayeth not.

_Calvin "Buddy" Horton_ (signature)

Calvin "Buddy" Horton

Subscribed and sworn to before me this ___ day of March, 2015, to certify which witness my hand and official seal.

Rhonda Jean Garcia
Notary Public, State of Texas
My Commission Expires
August 6, 2016

Notary Public in and for the State of Texas

2

# Exhibit B

STATE OF TEXAS    )
                   )
COUNTY OF HARRIS )

### AFFIDAVIT OF JIMMIE L.J. BROWN, Jr., ESQ.

1. My name is Jimmie L. J. Brown, Jr. I am over the age of 18 and fully competent to give this statement.

2. I received a Juris Doctor from Texas Southern University in 1984 and was admitted to the Texas Bar in November 1984.

3. My law office is currently located at 3102 Cherry Creek Drive, Missouri City, TX 77459. I primarily practice in Fort Bend and Harris Counties, Texas.

4. I was retained by the parents of Rodney Reed to represent him in the capital murder case that was filed against him in Bastrop County in 1997.

5. In the summer of 1997, as part of my investigation of the case, I went to the Bastrop HEB where the victim, Stacey Stites, worked in the months before her death. I spoke with several of Ms. Stites' co-workers, some of whom said that they were aware of a romantic relationship between Ms. Stites and Mr. Reed having witnessed the close relationship between them. I wrote down the names of the employees I spoke with and took notes memorializing these conversations. I placed these notes in the file I maintained on Mr. Reed's case.

6. I returned to the Bastrop HEB several weeks later to speak again with Ms. Stites' co-workers. On this visit, Ms. Stites' co-workers were unwilling to speak with me about Ms. Stites, Mr. Reed, or their relationship. I suspected that someone, most probably the Bastrop City Police, had exerted pressure on them and told them not to cooperate with me or provide any information that could be helpful to Mr. Reed and his defense in this case.

7. Around this same time, I noticed that I was being followed by a police car every time I came to and left Bastrop, such that I would restrict my evening travels.

8. I ceased representing Mr. Reed in the Fall of 1997 because Mr. Reed's family could not afford to pay the attorney's fees and expenses that would be required to mount a defense to the capital murder charges. At this time, I gave my file, bound and sealed, containing the only copy of my notes on my conversation with the HEB employees to Mr. Calvin Garvie, the then attorney who took over representation of Mr. Reed

Further affiant sayeth naught.



Jimmie Brown, Jr.

Sworn to before me on this 12 day of February 2015



Notary Public

ITTY JOSEKUTTY
Notary Public
STATE OF TEXAS
My Comm. Exp. September 10, 2016